IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

GORDON LARSON,

                                                          Case No. 2:21-cv-1328-JR

                                                          OPINION AND ORDER

                   Plaintiff,

            v.

GRANT COUNTY DISTRICT
ATTORNEY JIM CARPENTER
and GRANT COUNTY DEPUTY
DISTRICT ATTORNEY
RICCOLA VOIGT,

                 Defendants.

_____

RUSSO, Magistrate Judge:

      Plaintiff, Gordon Larson, brings this action alleging defendants Jim Carpenter and Riccola

Voight violated his civil rights. Defendants move to dismiss. For the reasons stated below,

defendants' motion is granted.

Page 1 – OPINION AND ORDER

<u>ALLEGATIONS</u>

Plaintiff is a resident of Grant County, Oregon, and a retired Oregon State police lieutenant.  Defendant Jim Carpenter is the elected District Attorney for Grant County and defendant Riccola Voight was a Deputy District Attorney.  Complaint (ECF <u>1</u>) at ¶¶ 5-7, 10.

Plaintiff alleges in 2019 he presented defendant Carpenter with his concerns about the veracity of then Grant County Sheriff Palmer and that Carpenter was not informing defendants and criminal defense counsel of exculpatory evidence related to Sheriff Palmer.  Plaintiff further alleges he frequently reminded Carpenter of his responsibilities under <u>Brady v. Maryland</u>, 373 US 83 (1963).  <u>Id.</u> at ¶ 11.

Plaintiff asserts that because it was clear Carpenter was not going to inform defendants of Palmer's veracity issues, he began to record telephone conversations with Carpenter.  <u>Id.</u> at ¶ 13. Plaintiff alleges that in April 2020, after meeting in person with Carpenter to further express his concerns about Palmer, he "informed defendant Carpenter that plaintiff had recorded some of their previous telephone conversations and had forwarded the conversations to local news agencies." <u>Id.</u> at ¶ 14.

Plaintiff alleges that on June 24, 2020, Carpenter approached Under Sheriff Zach Mobley and Deputy Savanah Wyllie asserting the following, according to Wyllie's notes:

a. The conversation occurred June 24, 2020 at 11:06am.
b. Defendant Carpenter reported that, "Gordon Larson is Black-mailing Jim to Brady Glenn Palmer."
c. "Gordon has secretly been recording Jim in meetings."
d. "Gordon claimed to have already sent recordings to OPB."
<u>Id.</u> at ¶ 15.

Plaintiff further alleges that according to public records requests (1) Under Sheriff Mobley and Deputy Wyllie failed to: assign a case number or investigation number, interview plaintiff, inform Sheriff Palmer of the complaint, apply for a search warrant, write a report, request a grand

jury subpoena from the District Attorney's office, and review emails between plaintiff and Carpenter; (2) Grant County Legal Assistant Jamie McKay prepared a grand jury subpoena to OPB requesting all recordings and documents submitted to it from plaintiff regarding Palmer or Carpenter signed by Voight; and (3) Voight did not review any emails from Wylie or Mobley before signing the subpoena.  Id. at ¶¶ 16-17.

Plaintiff alleges there is sufficient information and belief the Grant County Sheriff's Office never investigated Carpenter's complaint about plaintiff.  Id. at ¶ 22.  Plaintiff further alleges there is sufficient information and belief no Grant County Grand jury heard any evidence about Carpenter's complaint and therefore the subpoena was not justified.  Id. at ¶ 23.  Plaintiff also asserts "there is sufficient information and belief that Carpenter falsely reported facts and crimes to the Grant County Sheriff's Office hoping they would investigate plaintiff for a criminal offense."  Id. at ¶ 25.

Plaintiff asserts defendants retaliated against him for asserting his First Amendment rights in violation of 42 U.S.C. § 1983.  Plaintiff further asserts defendants engaged in intentional infliction of severe emotional distress.  Defendants move to dismiss both claims.

<u>DISCUSSION</u>

A.    First Amendment Retaliation

To establish a First Amendment retaliation claim, a plaintiff must plead facts showing (1) he was engaged in a constitutionally protected activity; (2) the defendant's actions would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) the protected activity was a substantial or motivating factor in the defendant's conduct. See Pinard v. Clatskanie Sch. Dist. 6J, 467 F.3d 755, 770 (9th Cir. 2006).

For purposes of their motion, defendants concede plaintiff engaged in protected speech in providing recordings to news agencies.

The actions identified in the complaint allegedly chilling plaintiff's protected speech are making a false police report about blackmail, attempting to convince the Grant County Sheriff's Office to investigate plaintiff, the District Attorney opening a criminal investigation targeting plaintiff, and issuing a grand jury subpoena to local media outlets.

[D]e minimis deprivations of benefits and privileges on account of one's speech do not give rise to a First Amendment claim. Rather, for adverse, retaliatory actions to offend the First Amendment, they must be of a nature that would stifle someone from speaking out. The most familiar adverse actions are "exercise[s] of governmental power" that are "regulatory, proscriptive, or compulsory in nature" and have the effect of punishing someone for his or her speech. Laird v. Tatum, 408 U.S. 1, 11, 92 S.Ct. 2318, 33 L.Ed.2d 154 (1972).

Blair v. Bethel Sch. Dist., 608 F.3d 540, 544 (9th Cir. 2010)

An action may reasonably chill protected speech even if it falls short of regulation, proscription, or compelled acts in direct punishment of speech:

In recent years this Court has found in a number of cases that constitutional violations may arise from the deterrent, or 'chilling,' effect of governmental regulations that fall short of a direct prohibition against the exercise of First Amendment rights. E.g., Baird v. State Bar of Arizona, 401 U.S. 1, 91 S.Ct. 702, 27 L.Ed.2d 639 (1971); Keyishian v. Board of Regents, 385 U.S. 589, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967); Lamont v. Postmaster General, 381 U.S. 301, 85 S.Ct. 1493, 14 L.Ed.2d 398 (1965); Baggett v. Bullitt, 377 U.S. 360, 84 S.Ct. 1316, 12 L.Ed.2d 377 (1964). In none of these cases, however, did the chilling effect arise merely from the individual's knowledge that a governmental agency was engaged in certain activities or from the individual's concomitant fear that, armed with the fruits of those activities, the agency might in the future take some other and additional action detrimental to that individual. Rather, in each of these cases, the challenged exercise of governmental power was regulatory, proscriptive, or compulsory in nature, and the complainant was either presently or prospectively subject to the regulations, proscriptions, or compulsions that he was challenging.

Laird v. Tatum, 408 U.S. 1, 11 (1972).

Thus, governmental action may be subject to constitutional challenge even though it has only an indirect effect on the exercise of free speech, however, a plaintiff must still plead and prove he sustained, or is in immediate in danger of sustaining, a direct injury as the result of that action.

Id. at 12–13.

The complaint plausibly alleges an attempt to "falsely" investigate plaintiff's speech activity as "blackmail." The complaint also plausibly alleges use of the grand jury power to investigate purported illegal activity by the plaintiff. From these facts a trier of fact could infer a threat of indictment related to plaintiff's speech. What is not alleged in the complaint is when and how plaintiff learned of this investigation and how it impacted his exercise of free speech.[1] Moreover, the complaint does not allege facts demonstrating how the alleged chilling activities continue to transform a fear of indictment or other law enforcement investigation into immediate danger of direct injury as a result of plaintiff's speech or continued engagement in such speech.

In addition, because the complaint does not allege how plaintiff learned of the investigation and its impact on him, it lacks a plausible assertion showing that defendants acted with the intent to chill plaintiff's speech. See Skoog v. County of Clackamas, 469 F.3d 1221, 1232 (9th Cir.2006) (in a First Amendment retaliation claim, plaintiff must demonstrate that defendant's "desire to cause the chilling effect was a but-for cause of the defendant's action"). Accordingly, plaintiff's First Amendment claim is dismissed without prejudice and with leave to amend to cure these deficiencies. Because the complaint does not plausibly allege a First Amendment Claim, the Court need not address defendants' assertion of qualified immunity.

B.    Intentional Infliction of Emotional Distress

Plaintiff alleges defendants' conduct caused severe emotional distress resulting in pain, suffering, severe mental anguish, physical injury, unnecessary medical care and expenses, lost wages, lost future wages, and loss of future earning capacity. Complaint (ECF 1) at ¶¶ 33-34.

To state a claim for intentional infliction of emotional distress, a plaintiff must allege

---

[1] A threat of retaliation is sufficient injury if made in retaliation for a free speech activity. See Burgess v. Moore, 39 F.3d 216, 218 (8th Cir.1994).

    "'(1) the defendant intended to inflict severe emotional distress on the plaintiff, (2) the defendant's acts were the cause of the plaintiff's severe emotional distress, and (3) the defendant's acts constituted an extraordinary transgression of the bounds of socially tolerable conduct.'"

McGanty v. Staudenraus, 321 Or. 532, 543, 901 P.2d 841, 849 (1995) (quoting Sheets v. Knight, 308 Or. 220, 236, 779 P.2d 1000, 1010 (1989)).

    Whether the conduct alleged is sufficiently extreme or outrageous to be actionable is a fact-specific inquiry, one to be made on a case-by-case basis considering the totality of the circumstances. Delaney v. Clifton, 180 Or. App. 119, 130, 41 P.3d 1099, 1106 (2002). Determining whether the alleged conduct is an extraordinary transgression of the bounds of socially tolerable conduct is initially a question of law. Id.

    The most important factor is whether a special relationship exists between a plaintiff and a defendant, such as an employer-employee, physician-patient, counselor-client, landlord-tenant, debtor-creditor or government officer-citizen, that shapes the interpersonal dynamics of the parties. A defendant's relationship to the plaintiff may be one that imposes on the defendant a greater obligation to refrain from subjecting the victim to abuse, fright, or shock than would be true in arm's-length encounters among strangers.

House v. Hicks, 218 Or. App. 348, 360, 179 P.3d 730, 737 (2008) (internal citations and quotations omitted).

    While there are allegations establishing defendants are governmental officers and that plaintiff is a citizen, there are no allegations suggesting that a special relationship existed between plaintiff and defendants beyond defendants' general relationship to the public. Nonetheless, falsely accusing someone of criminal behavior, such as being a thief and a fraud, knowing that the accusations are not true, and persuading a police officer to harass the accused person on the basis of those assertions, constitute more than every-day rude behavior and is sufficient to allege an extraordinary transgression of the bounds of socially tolerable conduct. Woods v. First Am. Title Ins. Co. of Oregon, 102 Or. App. 343, 348, 794 P.2d 454, 456–57, adhered to on reconsideration,

104 Or. App. 100, 798 P.2d 1121 (1990) (regardless of a special relationship, communication of accusations of being a liar, thief, and fraud to induce harassment by police demonstrates an extraordinary transgression of the bounds of socially tolerable conduct).  However, the complaint fails to allege facts showing the Sheriff's Office undertook an investigation or engaged in any harassing activity directed at plaintiff.

> Our cases hinge IIED liability based on initiating false police reports on the nature of the false statement, the legal relationship between the parties, whether a defendant made the false statement with an ulterior motive, and whether the conduct was directed to a person who is particularly vulnerable to emotional distress.
> Furthermore, the case law suggests that the character of the false statements must defame or significantly stigmatize the IIED plaintiff, that is, they must describe that person and be injurious to his or her reputation.

House v. Hicks, 218 Or. App. 348, 362–63, 179 P.3d 730, 738–39 (2008).

Plaintiff's allegations regarding the purported false report to the Sheriff's deputies are thin to nonexistent regarding motive, how the report was communicated to plaintiff, the impact on plaintiff, or any injury to plaintiff's reputation.  Moreover, given the dearth of facts regarding how the alleged false statements were directed to plaintiff, the complaint fails to sufficiently plead facts regarding intent.  See McGanty, 321 Or. at 550, 901 P.2d at 853 (intent is demonstrated when the actor desires to inflict severe emotional distress, and also where he knows that such distress is certain, or substantially certain, to result from his conduct).  Moreover, plaintiff offers only insufficient conclusory allegations of severe emotional distress resulting from the defendants' conduct.  Accordingly, the motion to dismiss this claim is also granted without prejudice and with leave to amend.

CONCLUSION

Defendants' motion to dismiss (ECF 19) is granted.  Plaintiff is granted to leave to amend

the complaint, within 14 days from the date of this order, to cure the deficiencies noted above.

.

DATED this 8th day of June, 2022.

_____
/s/ Jolie A. Russo
Jolie A. Russo
United States Magistrate Judge