IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| GORDON LARSON, | Case No. 2:21-cv-01328-JR |
| Plaintiff, | OPINION AND ORDER |
| v. | |
| GRANT COUNTY DISTRICT ATTORNEY JIM CARPENTER and GRANT COUNTY DEPUTY DISTRICT ATTORNEY RICCOLA VOIGT, | |
| Defendants. | |

RUSSO, Magistrate Judge:

      Defendants Jim Carpenter and Riccola Voigt move to dismiss plaintiff Gordon Larson's amended complaint pursuant to Fed. R. Civ. P. 12(b)(6). All parties have consented to allow a Magistrate Judge enter final orders and judgment in this case in accordance with Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). For the reasons stated below, defendants' motion is granted.

Page 1 – OPINION AND ORDER

## BACKGOUND

Plaintiff is a resident of Grant County, Oregon, and a retired Oregon State Police Lieutenant. First Am. Compl. ("FAC") ¶¶ 5, 10 (doc. 24). At all relevant times, Carpenter was the elected District Attorney for Grant County and Voight was a Deputy District Attorney. *Id.* at ¶¶ 6-7.

In 2019, plaintiff expressed concern to Carpenter about the veracity of Grant County Sheriff Palmer. Specifically, plaintiff alleges that he was concerned that "Carpenter was not informing criminal defense counsel and defendants of exculpatory evidence related to Sheriff Palmer." *Id.* at ¶ 12. According to plaintiff, he frequently reminded "Carpenter of his responsibilities under *Brady v. Maryland*, 373 U.S. 83 (1963)." *Id.*

When it "became apparent that Defendant Carpenter was not going to inform criminal defense counsel of Sherriff Palmer's veracity issues," plaintiff began recording his telephone conversations with Carpenter. *Id.* at ¶ 13. In April 2020, after meeting in person with Carpenter to further express his concerns about Palmer, plaintiff informed "Carpenter that [he] had recorded some of their previous telephone conversations and had forwarded the conversations to local news agencies." *Id.* at ¶ 14. Carpenter subsequently "approached Under Sheriff Zach Mobley and Deputy Savanah Wyllie" asserting the following, according to Wyllie's notes:

> a. The conversation occurred June 24, 2020 at 11:06am.
> b. Defendant Carpenter reported that, "Gordon Larson is Black-mailing Jim to Brady Glenn Palmer."
> c. "Gordon has secretly been recording Jim in meetings."
> d. "Gordon claimed to have already sent recordings to OPB."

*Id.* at ¶ 15.

According to public records requests: (1) Mobley and Wyllie failed to: assign a case or investigation number to Carpenter's complaint, interview plaintiff, inform Palmer of plaintiff's

Page 2 – OPINION AND ORDER

allegations, apply for a search warrant, write a report, request a grand jury subpoena from the District Attorney's office, or review emails between plaintiff and Carpenter; (2) Grant County Legal Assistant Jamie McKay prepared a grand jury subpoena at Carpenter's direction to Oregon Public Broadcasting requesting all recordings and documents submitted from plaintiff regarding Palmer or Carpenter; and (3) Voigt did not review any documents before signing the subpoena. *Id.* at ¶¶ 16-17, 24.

Based on these facts, plaintiff alleges the Grant County Sheriff's Office "never investigated Carpenter's criminal complaint about plaintiff" even though "Carpenter falsely reported facts and crimes . . . in the hopes they would investigate plaintiff." *Id.* at ¶¶ 22, 25. Plaintiff further alleges that the Grant County Grand Jury never heard evidence about "Carpenter's criminal complaint about plaintiff" and therefore the subpoena was not justified. *Id.* at ¶ 23.

On September 9, 2021, plaintiff initiated this case, alleging a claim under 42 U.S.C. § 1983 associated with the denial of his First Amendment rights, as well as a pendent state law claim for intentional infliction of emotional distress ("IIED"). Defendants moved to dismiss both claims and, on June 8, 2022, the Court granted defendants' motion. In particular, the Court found that plaintiff's IIED claim "fail[ed] to allege facts showing the Sheriff's Office undertook an investigation or engaged in any harassing activity directed at plaintiff." *Larson v. Carpenter*, 2022 WL 2066154, *3 (D. Or. June 8, 2022). Additionally, the Court found that, "given the dearth of facts regarding how the alleged false statements were directed to plaintiff, the complaint fails to sufficiently plead facts regarding intent." *Id.* at *4. Concerning plaintiff's First Amendment claim, the Court explained:

> What is not alleged in the complaint is when and how plaintiff learned of this investigation and how it impacted his exercise of free speech. Moreover, the complaint does not allege facts demonstrating how the alleged chilling activities continue to transform a fear of indictment or other law enforcement investigation

> into immediate danger of direct injury as a result of plaintiff's speech or continued engagement in such speech. In addition, because the complaint does not allege how plaintiff learned of the investigation and its impact on him, it lacks a plausible assertion showing that defendants acted with the intent to chill plaintiff's speech.

*Id.* at *3. Accordingly, the Court found "the complaint does not plausibly allege a First Amendment Claim" and therefore declined to "address defendants' assertion of qualified immunity." *Id.*

On June 9, 2022, plaintiff lodged his Amended Complaint, eliminating his IIED claim but otherwise realleging his retaliation claim under the First Amendment. On June 14, 2022, defendants filed the present motion to dismiss. Briefing was completed in regard to that motion on July 7, 2022.

## STANDARD

Where the plaintiff "fails to state a claim upon which relief can be granted," the court must dismiss the action. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). For the purposes for the motion to dismiss, the complaint is liberally construed in favor of the plaintiff and its allegations are taken as true. *Rosen v. Walters*, 719 F.2d 1422, 1424 (9th Cir. 1983). Regardless, bare assertions that amount to nothing more than a "formulaic recitation of the elements" of a claim "are conclusory and not entitled to be assumed true." *Ashcroft v. Iqbal*, 556 U.S. 662, 680-81 (2009). Rather, to state a plausible claim for relief, the complaint "must contain sufficient allegations of underlying facts" to support its legal conclusions. *Starr v. Bacca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

## DISCUSSION

Plaintiff's amended First Amendment claim is identical to his original pleadings except for the addition of the following allegations:

>(1) After receiving the unlawfully issued Grand Jury Subpoena, a reporter from Oregon Public Broadcasting contacted plaintiff. The reporter informed plaintiff that they received the subpoena, informed plaintiff that it appeared he was under criminal investigation and asked plaintiff if he was in any trouble with the law enforcement.
>
>(2) There is sufficient information and belief to allege that defendants knew, and intended, the recipient of the unlawful subpoena would contact plaintiff before responding to the subpoena and inform plaintiff that he was the subject of a criminal investigation. Defendants sent the subpoena, falsely reported a crime to the Grant County Sheriff's Office and, on their own, criminally investigated plaintiff in order to chill his speech and intimidate plaintiff into abandoning his efforts to report defendants' failure to inform criminal defendant of Sheriff Palmer's history of untruthfulness.
>
>(3) After learning of defendants' fraudulent criminal investigation, plaintiff abandoned all efforts to report defendants' failure to inform criminal defendants of Sheriff's Palmer's history of untruthfulness out of fear of indictment or further criminal investigation. There is sufficient information and belief to allege that defendants intended to silence plaintiff when they made the false report of criminal activity, fraudulently initiated a criminal investigation, and issued a grand jury subpoena to Oregon Public Broadcasting.

FAC ¶¶ 26-28 (doc. 24).

Defendants argue that dismissal is warranted because "plaintiff has alleged only one additional fact" – i.e., that he was informed of the subpoena by a third-party – which "does not allege any conduct on the[ir] part" or "address the reasons for the Court's prior dismissal of his Complaint." Defs.' Reply to Mot. Dismiss 1 (doc. 30). In addition, defendants contend that "[p]laintiff's claim is barred by the doctrine of qualified immunity because there is no clearly established statutory or constitutional right to be free from a prosecutor issuing a subpoena to a third-party [or] having a conversation with law enforcement about one's conduct." Defs.' Mot. Dismiss 4 (doc. 25).

To succeed under 42 U.S.C. § 1983, a plaintiff must demonstrate that: (1) the conduct complained of deprived him or her of an existing federal constitutional or statutory right; and (2) the conduct was committed by a state actor or a person acting under color of state law. *West v.*

*Atkins*, 487 U.S. 42, 48 (1988) (citations omitted). It is undisputed that defendants qualify as state actors for the purposes of § 1983.

Qualified immunity shields government officials from damages liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citations omitted). To determine whether a government actor is entitled to qualified immunity, the court evaluates, in no particular order, whether: (1) the alleged misconduct violated a right; and (2) that right was clearly established at the time of the alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

**I.     Whether Plaintiff has Alleged the Violation of a Constitutional Right**

To state a retaliation claim under the First Amendment, the plaintiff must plead facts showing: (1) he "was engaged in constitutionally protected activity"; (2) the defendant's actions caused the plaintiff "to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity"; and (3) the "defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct." *Buckheit v. Dennis*, 713 F.Supp.2d 910, (N.D. Cal. 2010) (citing *Mendocino Env't Ctr. v. Mendocino Cnty.*, 192 F.3d 1283, 1300-01 (9th Cir. 1999)). To ultimately "prevail on such a claim, a plaintiff must establish a causal connection between the government defendant's retaliatory animus and the plaintiff's subsequent injury." *Capp v. Cnty. of San Diego*, 940 F.3d 1046, 1053 (9th Cir. 2019) (citations and internal quotations omitted). Specifically, "a plaintiff must show that the defendant's retaliatory animus was a but-for cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *Id.*

It is undisputed plaintiff has met the first element. Concerning the second element, this case presents a closer call. The potential for criminal charges to proceed before a grand jury is likely a sufficiently serious consequence that would chill the average person from voicing criticism of official conduct. Ultimately, however, a third-party, as opposed to defendants, informed plaintiff of the subpoena and there are no well-plead facts reflecting that defendants intended to chill plaintiff's speech. In fact, there are no allegations evincing contact between defendants and plaintiff, or that indicate defendants attempted, or otherwise desired, to make their conduct known to plaintiff. As a result, the precedent plaintiff relies on – i.e., *White v. Lee*, 227 F.3d 1214 (9th Cir. 2000) – is distinguishable.

Further, "a complainant who alleges that the exercise of his First Amendment rights is being chilled by [an overly broad] governmental investigative and data-gathering activity" still "must show that he has sustained, or is immediately in danger of sustaining, a direct injury as the result of that action." *Laird v. Tatum*, 408 U.S. 1, 10-13 (1972). Plaintiff's new allegations fall short of this standard. Although plaintiff now details how he learned of Carpenter's subpoena and its negative impact on his speech, he does not provide sufficient facts to plausibly suggest that the alleged chilling activities continued in a manner that would reasonably transform his fear of indictment or other law enforcement activities into an immediate danger of direct injury.

Also problematic to plaintiff's claim is the Supreme Court's admonition that an allegation is not plausible where there is an "obvious alternative explanation" for the alleged misconduct. *Iqbal,* 556 U.S. at 682 (citation and internal quotations omitted). Here, it is not entirely clear that defendants' motives were to punish plaintiff for exercising his First Amendment rights. One aspect of a prosecutor's job is to report potentially unlawful conduct to law enforcement. While Carpenter may have improperly used the word "blackmail," he nonetheless accurately reported to Mobley

and Wyllie that plaintiff "ha[d] secretly been recording" Carpenter and "claimed to have already sent recordings to OPB." FAC ¶ 15 (doc. 24). That is, plaintiff expressly alleges that he recorded private telephone conversations with Carpenter (presumably without his consent) and then submitted those recordings to local news agencies when Carpenter refused to capitulate to his requests concerning the correction of Palmer's allegedly wrongful conduct. *Id.* at ¶¶ 11-14. It is equally plausible that defendants' efforts to subpoena Oregon Public Broadcasting were motivated by plaintiff's unpermitted recording activities, as opposed to plaintiff's speech surrounding Palmer's conduct.

## II.    Whether the Right Was Clearly Established

A right is clearly established if its contours are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (citation and internal quotations omitted). The dispositive inquiry is whether the state actor had "'fair warning' that his conduct deprived his victim of a constitutional right." *Id.* at 740 (citation omitted); *see also Mullenix v. Luna*, 577 U.S. 7, 11-12 (2015) ("[w]e do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate").

Even assuming plaintiff adequately alleged a First Amendment violation, defendants would be entitled to qualified immunity.[1] Significantly, plaintiff does not allege he was criminally

---

[1] Generally, qualified immunity, rather than absolute immunity, applies when prosecutors "perform administrative functions, or investigative functions normally performed by a detective or police officer." *Genzler v. Longanbach*, 410 F.3d 630, 636 (9th Cir. 2005) (citation and internal quotations omitted). Although "the Supreme Court has resisted any attempt to draw a bright-line" between advocacy or police-type investigative work, prosecutors have been held absolutely immune for "maliciously initiat[ing] a prosecution, us[ing] perjured testimony at trial, or suppress[ing] material evidence at trial." *Id.* at 637 (citations omitted). Conversely, absolute immunity is not available "to prosecutors who had fabricated evidence during the early stage of the investigation when police officers and assistant prosecutors were performing essentially the

Page 8 – OPINION AND ORDER

charged or prosecuted, or that the information he furnished to Oregon Public Broadcasting was privileged or confidential. He also does not allege that Voigt's subpoena resulted in the disclosure of any records, a prolonged criminal investigation, or any accusations of law-breaking, threats, improper demands, or admonishments to cease pursuing Palmer's alleged wrongdoing.

In other words, the only facts plaintiff identifies in support of his claim are that Carpenter provided putatively false information to the Grant County's Sherriff's Office (in that he used the word "blackmail"), which they neglected to act upon, and the issuance of a third-party subpoena without a sufficient investigation. FAC ¶ 15-17, 22-25 (doc. 24); *see also* Pl.'s Resp. to Mot. Dismiss 3 (doc. 27) ("Voigt signed and issued the subpoena with reviewing any materials . . . There was never an open investigation by either the Grant County Sheriff's Office or Grant County District Attorney to justify the issuance of Defendant Voigt's grand jury subpoenas").

Critically, plaintiff has not cited to, and the Court is not aware of, any authority that would put county prosecutors on notice that conferring with law enforcement or attempting to subpoena private recordings provided to a third-party in the manner that occurred here was unconstitutional. Plaintiff attempts to circumvent this shortcoming by characterizing the underlying issue as the right "not to be subjected to criminal charges on the basis of false evidence that was deliberately

---

same investigatory functions" or "for providing legal advice to police that probable cause exists to arrest a suspect." *Id.* (citations omitted). Thus, while no party addresses this issue, the Court notes that prosecutorial immunity would likely attach to defendants' actions to the extent they are not otherwise protected by qualified immunity. *Cf. Broam v. Bogan*, 320 F.3d 1023, 1029 (9th Cir. 2003) ("[a] prosecutor is absolutely immune from liability for failure to investigate the accusations against a defendant before filing charges") (citation omitted); *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993) (prosecutor's evaluation of the evidence pre-indictment is entitled to absolute immunity); *Milstein v. Cooley*, 257 F.3d 1004, 1012 (9th Cir. 2001) (utilizing a Grand Jury to initiate prosecution is protected by absolute immunity); *see also Sanders v. City & Cnty. of S.F.*, 226 Fed.Appx. 687, 690 (9th Cir. 2007) (prosecutor's "decision to convene a grand jury" is intimately associated with the judicial phase of the criminal process, "even if done while lacking probable cause") (collecting cases).

fabricated by the government." Pl.'s Resp. to Mot. Dismiss 10 (doc. 27) (quoting *Devereaux v. Abbey*, 263 F.3d 1070, 1074-75 (9th Cir. 2001)).

However, even under the line of cases recognizing this clearly established due process right, plaintiff cannot evade qualified immunity. Indeed, as noted above, plaintiff does not allege he was subjected to criminal charges or that defendants fabricated evidence. As such, plaintiff has not alleged sufficient facts to demonstrate that defendants "continued their investigation of [plaintiff] despite the fact that they knew or should have known that he was innocent." *Devereaux*, 263 F.3d at 1076. In sum, the Court cannot find that it would have been clear to a government actor confronting an analogous situation in 2020 that his or her actions were "plainly incompetent or [a knowing violation of] the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

## CONCLUSION

For the reasons stated herein, defendants' Motion to Dismiss (doc. 25) is granted.

IT IS SO ORDERED.

DATED this 9th day of September, 2022.

        /s/ Jolie A. Russo
        Jolie A. Russo
    United States Magistrate Judge